**Leon SROKI**

v.

**KOCH–ELLIS MARINE CONTRACTORS, Inc.,**

and

**The Travelers Insurance Company.**

**Civ. A. No. 3979.**

United States District Court
E. D. Louisiana, New Orleans Division.

March 23, 1956.

Supplemental and Amended Findings of Fact and Conclusions of Law
May 22, 1957.

---

Raymond H. Kierr, Samuel C. Gainsburgh, New Orleans, La., for plaintiff.

May & Carrere, E. A. Carrere, Jr., Cobb & Wright, Joseph V. Ferguson, New Orleans, La., for defendants.

CHRISTENBERRY, Chief Judge.

Complainant brought this action against Koch-Ellis Marine Contractors, Inc., and its liability insurer, The Travelers Insurance Company, for the recovery of maintenance, for the recovery of damages for failure to pay maintenance and for the recovery of compensatory damages under the Jones Act, 46 U.S.C.A. § 688, and the general maritime law. The incident giving rise to this litigation is alleged to have occurred on December 23, 1952, while Leon Sroki was employed by Koch-Ellis Marine Contractors, Inc., as a member of the crew of the Tug Harry K. The issues of compensatory damages under the Jones Act and indemnity under the general maritime law were submitted to a jury, which returned a verdict for the complainant. The claims for maintenance and for damages for failure to pay maintenance were, by agreement of the parties, transferred to the Admiralty Docket to be determined by the Court. It is in connection with these claims, the issues of fact and law having been heard on the pleadings and proof of the parties, that, after due deliberation and pursuant to Supreme Court Admiralty Rule 46½, 28 U.S.C.A., the Court now makes the following findings of fact and conclusions of law:

Findings of Fact

I.

Leon Sroki, an elderly man and member of the crew of the tug Harry K., fell to the deck of the tug while jumping from the tug to a barge on December 22, 1952.

II.

He was immediately taken ashore at Vacherie, Louisiana, where he was examined and treated by Dr. C. R. Daunis. Dr. Daunis' examination indicated that complainant sustained "Laceration of the left mandible and contusion and sprain of the left elbow". An X-ray of libelant's arm and shoulder by Dr. Daunis did not disclose any injury. After examination and suturing his chin, Dr.

Daunis discharged Sroki on December 22, 1952, as fit to resume work.

### III.

Sroki returned to New Orleans on the Harry K., and on arrival on December 23, 1952, announced his intention to quit. He was paid off, given a hospital slip, and transported to the U. S. Public Health Service Hospital at New Orleans. On arrival at the hospital, he stated that he did not desire to enter and requested transportation to downtown New Orleans, which was given him. At the office of Koch-Ellis Marine Contractors, Inc., in New Orleans, he was again offered hospitalization, which he declined.

### IV.

As a result of the fall, complainant sustained bruises and contusions of his left lumbar region, chest, left upper arm and shoulder, and a laceration of his left facial area. Complainant developed traumatic adhesions of the left shoulder joint.

### V.

No action was taken by Sroki for treatment of his alleged injury, however it appears that on or about December 26, 1952, he employed counsel to represent him, and thereafter on December 27, 1952, he made his first appearance at the U. S. Public Health Service Hospital in New Orleans.

### VI.

For the injuries sustained, complainant was treated at the U. S. Public Health Service Hospital in New Orleans, Louisiana, as an outpatient, from December 27, 1952, to February 9, 1953; as an inpatient from February 9, 1953, to March 18, 1953; as an outpatient from March 18, 1853, to May 21, 1953.

### VII.

As of February 22, 1954, complainant was still unfit for duty because of persisting limitation of motion due to the traumatic periarthritis and partial fibrous ankylosis of his left shoulder joint.

### VIII.

Complainant, through his counsel, demanded maintenance payments from respondent on January 16, 1953, at which time complainant was under active treatment as an outpatient at the U. S. Public Health Service Hospital.

### IX.

Respondent, upon request, was furnished an abstract of complainant's outpatient clinical record on January 23, 1953, notwithstanding which respondent refused to pay any maintenance to complainant.

### X.

■ Because of the negative report of Dr. Daunis and the ailments of complainant not connected with this accident, respondent's refusal to pay maintenance in any amount to complainant was not arbitrary or unreasonable.

### XI.

The applicable rate of maintenance is $5 per day.

### Conclusions of Law

### I.

This court has jurisdiction of the parties and the subject matter under the general maritime law.

### II.

■ Complainant is entitled to a decree against respondent, Koch-Ellis Marine Contractors, Inc., in the amount of $1,930 as maintenance at the rate of $5 per day from December 24, 1952, through February 8, 1953, and from March 19, 1953, through February 22, 1954, a total of 386 days. Luth v. Palmer Shipping Corp., 3 Cir., 1954, 210 F.2d 224, 1954 A.M.C. 502.

### III.

Complainant is further entitled to recover interest and costs.

Settle a decree in accordance with the foregoing, on five days' notice.

## Supplemental and Amended Findings of Fact and Conclusions of Law

On March 23, 1956, the Court made certain findings of fact and conclusions of law in this cause, in which it was found that complainant was entitled to a decree against respondent, Koch-Ellis Marine Contractors, Inc., in the amount of $1,930, as maintenance, at the rate of $5 per day from December 24, 1952, through February 8, 1953, and from March 19, 1953, through February 22, 1954. Upon motion of respondent and by minute entry of May 31, 1956, this matter was reopened so as to permit the respondent, Koch-Ellis Marine Contractors, Inc., to show the exact amount of complainant's earnings in support of its position that a credit should be allowed against the maintenance found due for the days during the period for which maintenance was allowed that complainant was gainfully employed. In opposition thereto, complainant asserted that any credit due respondent should be on a "day-to-day, dollar-for-dollar" basis.

It is in connection with these issues of fact and law, the same having been heard on the further proofs of the parties, that, after due deliberation, and pursuant to Supreme Court Admiralty Rule 46½, the Court now makes the following additional, supplemental and amended findings of fact and conclusions of law:

### Findings of Fact

### XII.

Complainant was employed as a helper in a doughnut shop from June 9, 1953, through, and beyond, February 22, 1954, in which employment complainant earned the sum of $4.20 per day, net, after deductions.

### Conclusions of Law

Conclusion of Law No. II, as originally filed herein, is hereby supplemented and amended to read as follows:

### II.

Complainant is entitled to maintenance at the rate of $5 per day from December 24, 1952, through February 8, 1953, and from March 19, 1953, through February 22, 1954, a total of 386 days, or the sum of $1,930, against which amount respondent is entitled to a credit of $4.20 per day from June 9, 1953 to February 22, 1954, a total of 259 days, or the sum of $1,087.80.

### II–A.

Complainant is entitled to a decree against respondent, Koch-Ellis Marine Contractors, Inc., in the amount of $842.20, as maintenance, at the rate of $5 per day from December 24, 1952, through February 8, 1953, a total of 46 days, and from March 19, 1953, through June 8, 1953, a total of 81 days, and at the rate of $0.80 per day from June 9, 1953, through February 22, 1954, a total of 259 days.

Original Conclusion of Law No. III is supplemented and amended to read as follows:

### III.

Complainant is further entitled to recover interest at the rate of 5 per cent per annum on all maintenance due, from February 22, 1954, until paid, together with all costs.

Decree has been entered accordingly.